UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON STEPHANY,<br><br>   Plaintiff,<br><br>   v.<br><br>STEPHAN MOLINARO and JOSEPH MULLIGAN,<br><br>   Defendants. | CIVIL ACTION NO. 3:20-CV-00649<br><br>(MEHALCHICK, M.J.) |

**MEMORANDUM**

Plaintiff Jason Stephany commenced this action on April 22, 2020, pursuant to 42 U.S.C. § 1983, asserting dental malpractice and negligence claims against Stephen Molinaro, a dentist at the State Correctional Institution (SCI) at Camp Hill, and Joseph Mulligan, a dental specialist at SCI-Dallas. (Doc. 1). Along with his complaint, Stephany filed a motion for leave to proceed *in forma pauperis*. (Doc. 2). This matter is now before the Court pursuant to its statutory obligation to screen the complaint pursuant to 28 U.S.C. § 1915A, 28 U.S.C. § 1915, and 42 U.S.C. § 1997e, and dismiss it if it fails to state a claim upon which relief can be granted.

Having screened the complaint, the Court finds that dismissal of this action is required under 28 U.S.C. § 1915A, 28 U.S.C. § 1915, and 42 U.S.C. § 1997e but that Stephany should be granted leave to file an amended complaint. His motion to proceed *in forma pauperis* (Doc. 2) is granted, and the complaint is deemed filed.

**I.    BACKGROUND**

Stephany alleges that on November 19, 2019, when he was an inmate at SCI-Camp Hill, he placed a sick call request because his top right wisdom tooth was causing him pain.

(Doc. 1, at 5). On December 3, 2019, he was called in to see a "skinny male dentist," who set upon extracting Stephany's tooth. (Doc. 1, at 5). Stephany describes the procedure as follows:

> [The dentist] was having difficulty pulling it and even the dentist['s] helper was looking at him. In the middle of trying to pull it and tooth breaking sounds and him struggling to the point I felt his hand shake he said to his helper that he might have to surgically remove it. After about 20 more seconds he said I think it's coming out now[, at] which time it finally came out after a lot of complications. The dentist[']s assistan[t] said "wow I bet it feels a lot better now."

(Doc. 1, at 5-6). After the procedure, Stephany was given 500mg extra strength Tylenol and told to "give it 2 weeks." (Doc. 1, at 6).

Two weeks later Stephany's gum was swollen "and hurt so bad" that he signed up for a dental sick call. (Doc. 1, at 6). A female dentist told Stephany that food was "in the part that was not closed yet," so she used a device to "blow the stuff out." (Doc. 1, at 6). The dentist prescribed Stephany antibiotics and more Tylenol and told him to "give it 2 more weeks." (Doc. 1, at 6). Another two weeks passed, during which time Stephany was transferred to SCI-Dallas,[1] where he submitted a third sick call request. (Doc. 1, at 6). He complained of a "sharp shard . . . in the ex[t]raction area," "roughness of the tooth next to it," and nerve damage. (Doc. 1, at 6). A dentist, described by Stephany as the "Indian Dentist," used a "hot cold on the 7 teeth to check the nerves at which point [Stephany] said it feels weird like [he] ha[d] a cavity in them teeth." (Doc. 1, at 6). She told Stephany that the shard he felt was a piece of bone and, after taking an x-ray of that area, stated that the bone should fall out within

---

[1] Based on his allegations, Stephany must have been transferred from SCI-Camp Hill to SCI-Dallas sometime around late December or early January. (*See* Doc. 1, at 6-7).

one month. (Doc. 1, at 6).

On January 7, 2020, Stephany wrote to the SCI-Dallas Dentist Department, and he was scheduled to see an outside oral surgeon. (Doc. 1, at 6-7). Around the same time, during a regular sick call, a "skinny, tall, male nurse" told Stephany that the "shard" could be a piece of bone or tooth and "should be a piece of tooth unless they chipped [his] jaw." (Doc. 1, at 7). Stephany submitted an Inmate's Request to Staff Member on January 8, 2020,[2] and saw the oral surgeon five days later, on January 13th. (Doc. 1, at 7, 14). The oral surgeon did not address Stephany's complaints about nerve pain and stated he "only pulls teeth." (Doc. 1, at 7). The surgeon did not examine or inspect Stephany's mouth. (Doc. 1, at 7).

After leaving the oral surgeon, Stephany signed up for sick call and was seen the next day by the dentist who last examined him (i.e., the "Indian Dentist"). (Doc. 1, at 7). Stephany informed the dentist that the surgeon did not take any action, and the dentist, along with her assistant, agreed that the extraction area had "healed weird" in that "a little of it was still open." (Doc. 1, at 7). She explained that if Stephany's "nerves and all are still messed up in 2 months," he would be placed back on a list to see the outside oral surgeon again. (Doc. 1, at 7). Apparently, the dentist was able to soften up the rough tooth next to the extraction site. (Doc. 1, at 7). No further action was taken. (Doc. 1, at 7).

Sometime in mid-January, Stephany filed a grievance complaining of the issues with

---

[2] Stephany complained of persistent pain over an almost two-month span, indicated that a piece of a broken tooth was lodged in his gum where the dentist had extracted his tooth, that the nerves to seven of his teeth felt "messed up," and that cold drinks and food "mess with the area too." (Doc. 1, at 14). The counselor who replied to Stephany's request stated that the oral surgeon "comes once a month" and that Stephany would be on "callout" for the surgeon on January 13, 2020. (Doc. 1, at 14).

his teeth and nerves. (Doc. 1, at 15). On February 19, 2020, the Grievance Officer denied Stephany's grievance based on several factors: (1) the oral surgeon who saw Stephany on January 13th documented that the extraction site was healing well; (2) Stephany underwent dental work on February 18th and did not mention continued discomfort from the tooth-extraction; (3) one month had passed since the grievance was filed, "so hopefully the sensation of nerve involvement ha[d] subsided"; (4) Stephany filed a pre-extraction consent form concerning a risk of post-procedure "numbness"; and (5) there was "no evidence of wrongdoing identified." (Doc. 1, at 15). The Grievance Officer noted that if the pain persisted, Stephany should sign up for dental sick call. (Doc. 1, at 15). Stephany appealed to the Facility Manager, who affirmed the Grievance Officer's determination and reasoning. (Doc. 1, at 16).

Stephany alleges that the nerves to seven of his upper right teeth are now "messed up," and that he continues to feel severe pain in that area of his mouth. (Doc. 1, at 5). He also is no longer as confident when he smiles. (Doc. 1, at 5). For relief, he requests a visit with a licensed professional oral surgeon, along with "$70,000 in damages and/or punitive damages, and pain, and suffering." (Doc. 1, at 5).

## II.    LEGAL STANDARDS

### A.    MOTION TO DISMISS

Under 28 U.S.C. § 1915A, the Court is obligated to screen a civil complaint in which a prisoner is seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 F. App'x 195, 197 (3d Cir. 2007) (not precedential). The Court must dismiss the complaint if it "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). The Court has a similar obligation with respect to actions brought *in forma pauperis* and actions concerning prison

conditions. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 42 U.S.C. § 1997e(c)(1). *See generally Banks v. Cnty. of Allegheny*, 568 F. Supp. 2d 579, 587-89 (W.D. Pa. 2008) (summarizing prisoner litigation screening procedures and standards). In this case, because Stephany is suing government officials, as an *in forma pauperis* plaintiff, about prison conditions, all three provisions apply. In performing its mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010); *Banks*, 568 F. Supp. 2d at 588.

Rule 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The United States Court of Appeals for the Third Circuit has noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), continuing with our opinion in *Phillips* [*v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.

1997). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). As the Supreme Court of the United States held in *Twombly*, in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In keeping with the principles of *Twombly*, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In *Iqbal*, the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, a court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Additionally, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–

21 (1972). Nonetheless, every complaint, including that filed by *pro se* litigant, is subject to the pleading requirements as articulated in Rule 8(a) of the Federal Rules of Civil Procedure, which requires a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (internal quotation marks omitted).

B. SECTION 1983

Stephany asserts federal civil rights claims under 42 U.S.C. § 1983 (Doc. 1, at 3), which provides a private cause of action for violations of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a § 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

III. DISCUSSION

In its current form, Stephany's complaint does not state a claim for relief under § 1983. Liberally construing the complaint, Stephany appears to assert claims for medical malpractice, medical negligence, and ordinary negligence, as well as state law claims based

on the same theories of liability. (*See* Doc. 1, at 3).

    A.    F<span style="font-variant:small-caps">ederal</span> C<span style="font-variant:small-caps">laims</span>

A claim for medical malpractice does not state a claim for relief under § 1983 because it does not allege a constitutional violation. *See Cobbs v. Caputo*, 578 F. App'x 84, 85 (3d Cir. 2014) ("Because malpractice does not constitute an Eighth Amendment violation, Cobbs' complaint fails to state a constitutional claim."). Nor do claims for medical or ordinary negligence. At best, these are state law claims over which the Court generally would not exercise supplemental jurisdiction absent a corresponding federal ground for relief, *see infra*.

While Stephany may be seeking to assert an Eighth Amendment deliberate indifference claim, which *would* raise constitutional implications under § 1983, his allegations fall short. Under the Eighth Amendment, made applicable to the states by the Fourteenth Amendment, a state must "provide medical care for those whom it is punishing by incarceration." *Estelle*, 429 U.S. at 103. To allege an Eighth Amendment cause of action based on the failure to provide adequate medical care, a "plaintiff[] must demonstrate (1) that the defendants were deliberately indifferent to [plaintiff's] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). The allegations must be such that "it can reasonably be inferred that the defendant acted with deliberate indifference to his serious medical needs." *See Rivera v. PA Diebert*, No. 3:13-CV-01399, 2016 WL 4771104, at *5 (M.D. Pa. Aug. 17, 2016). Mere disagreement over a course of treatment, or even the mistaken but well-intentioned efforts in treatment by a medical professional, does not constitute deliberate indifference to serious medical needs. *See White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). Inadvertent failure to provide care also does not establish a constitutional violation. *McAleese v. Owens*, 770 F. Supp. 255, 257 (M.D. Pa. 1991).

In this case, Stephany has not explicitly alleged that either Molinaro or Mulligan (or both) showed a deliberate indifference to his medical needs, nor has he alleged facts giving rise to an inference of deliberate indifference. *See Cobbs*, 578 F. App'x at 85 (observing that a "medical decision not to order an X-ray" does not amount to "cruel and unusual punishment" and is, at most, medical malpractice (internal quotation marks omitted)). Indeed, Stephany makes no reference to Molinaro or Mulligan except in the caption of his complaint and in naming them as defendants. (Doc. 1, at 2). There are indications that Molinaro is the SCI-Camp Hill dentist who extracted Stephany's tooth, and Mulligan is the oral surgeon who failed to examine Stephany's teeth at SCI-Dallas, but it is not clear. Because the Court is granting Stephany leave to amend his complaint, he should, if he chooses to file one, remedy this deficiency by identifying the defendants and explaining their specific roles in this case.

Further, given that Stephany alleges he was seen by a dentist every time he signed up for sick call, he does not assert a "deni[al] [of] medical care." *See Brown v. Delaware Cty. Prison Bd. of Inspectors*, 741 F. App'x 135, 138 (3d Cir. 2018). Nor has Stephany pleaded a claim based on the "delayed provision of medical treatment for non-medical reasons,"[3] the "denial of reasonable requests for treatment that results in suffering or risk of injury," or "persistent conduct in the face of resultant pain and risk of permanent injury." *See, e.g., Haskins v. DeRose*, No. CIV. A. 1:10-2509, 2011 WL 2654115, at *3 (M.D. Pa. May 20, 2011) (citing *Durmer v.*

---

[3] While "the delay of necessary medical treatment for nonmedical reasons can, in some circumstances, constitute a violation of the Eighth Amendment," Stephany has not alleged "specific facts that would tend to show that this was in fact the motivation behind [defendants'] decision[s], and [he] cannot rely on a mere conclusory statement," even if he had made such a statement here. *See Viera v. Williams*, No. 1:13-CV-02424, 2015 WL 5913193, at *5 (M.D. Pa. Oct. 7, 2015) (internal citation omitted).

*O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993); then citing *White*, 897 F.2d at 109)), *report and recommendation adopted*, No. 1:10-CV-2509, 2011 WL 2654112 (M.D. Pa. July 6, 2011); *see also Baker v. Younkin*, 529 F. App'x 114, 116 (3d Cir. 2013) ("[A]side from conclusory statements asserting deliberate indifference to his medical needs, it is clear from Baker's allegations that Younkin did admit Baker to the infirmary in order to receive treatment . . . .").

B. STATE LAW CLAIMS

To the extent Stephany's complaint can be read to assert state law claims of malpractice and negligence, to state a malpractice claim under Pennsylvania Law, a plaintiff must submit (or make efforts to submit) a certificate of merit, or else provide a reasonable excuse for not doing so. *Smith v. United States*, 498 F. App'x 120, 122 (3d Cir. 2012). Stephany makes no mention of a certificate of merit, and any state law malpractice claim must therefore be dismissed. Moreover, as to all state law claims, the Court finds no reason to exercise supplemental jurisdiction over these claims given that Stephany has failed to state a federal claim for relief. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (noting the general rule that when all federal law claims have been dismissed and only state law claims remain, the remaining claims properly belong in state court).

IV. LEAVE TO AMEND

The Court recognizes that *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed with prejudice, unless granting further leave to amend would be futile or result in undue delay. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 253 (3d Cir. 2007); *Alston v. Parker*, 363 F.3d 229, 235–36 (3d Cir. 2004). As the complaint in its current form does not state any claims upon which relief can be granted against either defendant, the Court is compelled to dismiss it. However, to

preserve Stephany's rights as a *pro se* litigant, the Court will grant him leave to file an amended complaint setting forth his factual allegations and legal claims in a manner that can be reviewed by the Court and, if necessary, answered by defendants. Stephany is advised that the amended complaint must be a pleading that **stands by itself without reference to the second amended complaint**. See *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992) (emphasis added). By granting leave to file an amended complaint, the Court is not acknowledging the viability of any of the causes of action asserted by Stephany. If he should choose to file an amended complaint, Stephany should do so with due regard to the deficiencies in his complaint, and he should base his allegations on an honest assessment of the facts he can allege in the context of federal court pleading requirements and the applicable substantive standards.

## V. RECOMMENDATION

For the foregoing reasons, dismissal of this action is required under 28 U.S.C. § 1915A, 28 U.S.C. § 1915, and 42 U.S.C. § 1997e. Stephany will be granted leave to file an amended complaint. His motion to proceed *in forma pauperis* (Doc. 2) is **GRANTED**.

An appropriate order will follow.

BY THE COURT:

Dated: June 15, 2020

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**